**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 26-CR-20073-MOORE/ELFENBEIN**

**UNITED STATES OF AMERICA**

**vs.**

**RISHI KAPOOR,**

**Defendant.**
______________________________/

# FACTUAL PROFFER

The Defendant, Rishi Kapoor (hereinafter referred to as the "Defendant"), his counsel, and the United States agree that, had this case proceeded to trial, the United States would have proven the following facts, among others, beyond a reasonable doubt:

*Background on Location Ventures*

1. The Defendant was a resident of Miami-Dade County, Florida, in the Southern District of Florida. Location Ventures was a Miami-based real estate company that purported to invest in the development of single-family homes, condominiums, and mixed-use properties, primarily in the Southern District of Florida. The Defendant was the chief executive officer of Location Ventures, a company incorporated in the State of Florida, between approximately 2016 and July 2023.

2. Patriots United was a Florida company formed in 2017, with its principal place of business in Coral Gables, Florida. Patriots United was owned by the Defendant, along with his family members and Chief Financial Officer 1 of Location Ventures. The Defendant's ownership interest in Location Ventures was through Patriots United.

3. Location Ventures had numerous subsidiaries and affiliated project level companies

(together, the "Location Ventures Projects"), one of which was Location Development LLC ("Location Development"). The Defendant served as the manager over the Location Ventures Projects. The Location Ventures Projects paid their payroll through Location Development.

4. Controller 1 served as the controller of Location Ventures from in or around February 2021 until approximately January 2024.

5. The employees of Location Ventures and the Location Ventures Projects had company email accounts that were hosted by an email provider with servers outside the State of Florida.

6. Location Ventures and the Location Ventures Projects raised money from investors to develop the projects. Investors could invest at the Location Ventures level, the URBIN level, or in a specific project (or both).

7. The Location Ventures operating agreement, signed by the Defendant and the investors, set his yearly "salary" at $300,000, with a maximum increase to $400,000 with board approval, and allowed the Defendant to receive profit from the sale of a Location Ventures Project based on his equity investment in Location Ventures through Patriots United.

8. The Defendant sold approximately 70 pre-construction condominium units to buyers through the following Location Ventures Projects: Villa Valencia, URBIN Miami Beach, and URBIN Grove. The condominium buyers made deposits towards the purchase of the units. The Florida Condominium Act mandated how developers like the Defendant could use money collected as deposits for condominiums before the construction was substantially completed. The developer was only permitted to withdraw funds "in excess" of 10 percent of the sales price before the closing on the condominium "when the construction of improvements ha[d] begun" for "actual costs incurred by the development in the construction and development of the condominium property ... in which the unit to be sold is located." Fla. Stat. 718.202(3). "Actual costs" included: "expenditures for

demolition, site clearing, permit fees, impact fees, and utility reservation fees, as well as architectural, engineering, and surveying fees that directly relate to construction and development of the condominium property." *Id.* The Florida Condominium Act further provided that: "no part of these funds may be used for salaries, commissions, or expenses of salespersons; for advertising, marketing, or promotional purposes; or for loan fees and costs, principal and interest on loans, attorney fees, accounting fees, or insurance costs." *Id.* The Defendant agreed to follow the above provisions of the Florida Condominium Act in his agreements with Escrow Agent 1 and Escrow Agent 2.

*Background on the Internal Revenue Service ("IRS") and Payroll Taxes*

9. The Federal Insurance Contribution Act ("FICA") required employers to withhold Medicare and Social Security taxes from their employees' wages. The Internal Revenue Code also required employers to withhold federal income taxes from their employees' wages. Employers, who held these taxes in trust for the United States, were required to pay them over to the IRS on behalf of their employees. Collectively, these withheld taxes are referred to as "trust fund taxes." An individual with the obligation to collect, account for, and pay over withheld trust fund taxes to the government is called a "responsible person."

10. For employers whose annual liability for trust fund taxes was greater than $1,000, responsible persons were required to report the employment taxes due for the employer on a Form 941, Employer's Quarterly Federal Tax Return ("Form 941") on a quarterly basis. The Form 941 was due at the end of the month following the end of each calendar quarter and reported the total amount of wages and other compensation subject to withholding, the total amount of income tax withheld, the total amount of employment taxes due, and the total tax deposits the employer made with the IRS.

*Count 10- Laundering the Proceeds of Wire Fraud*

11. The Defendant, through Location Ventures and the Location Ventures Projects, raised investor money through fraud, including by: 1) falsely inflating the amount of his initial capital contributions in Location Ventures; 2) personally misappropriating investor money in excess of what he agreed to be paid in the operating agreements and concealing the misappropriations from investors on financial records; 3) misusing investor money for specified Location Ventures Projects on other projects; 4) misrepresenting to escrow agents that he was using excess 10 percent deposits on permissible construction costs when he was not; 5) falsely representing to investors that he was paying the payroll taxes of his employees to the IRS; and 6) misusing construction loans for URBIN Coconut Grove, Villa Valencia, and Stewart Grove to buy out an investor who discovered some parts of the fraud. The Defendant and other co-conspirators made many of these false and misleading representations to investors via interstate wire, including over company email accounts.

12. For example, in 2021 and 2022, the Defendant took more from Location Ventures and from the Location Ventures Projects than the amount he agreed to receive in the operating agreements without getting board or investor approval to do so, including the following specific transactions:

a. In 2021, Defendant took approximately $1.5 million that he was not authorized to receive from a Location Ventures bank account on approximately August 3, 2021; and

b. In 2022, Defendant took approximately $1.328 million that he was not authorized to receive from a Location Ventures bank account on approximately August 15, 2022.

13. The Defendant concealed these unauthorized payments from investors. For example, on August 10, 2022, Location Ventures received $1,259,887 from the sale of 800 Dixie. On August 15, 2022, the Defendant emailed Chief Financial Officer 1 and Controller 1 to send him $1.328 million for a portion of the "Orduna [aka 800 Dixie] LV profit", a "broker fee" on 1505 Ponce, and

several "equity fees" that were not allowed by the corresponding operating agreement. After Location Ventures level investors asked about their expected distributions from the sale of 800 Dixie, the Defendant emailed a Location Ventures employee on December 15, 2022 a "general update" to provide to Location Ventures investors and told her to say "Orduna [aka 800 Dixie] sold but we are holding the cash to help support . . . . other projects." Defendant had already distributed the cash to himself.

14. In addition, the Defendant instructed Chief Financial Officer 1 and Controller 1 not to accurately enter the unauthorized misappropriations in the accounting records of Location Ventures, including by making false accounting entries to hide the payments to the Defendant on the Location Ventures balance sheets provided to Location Ventures investors.

15. The Defendant misappropriated the investor money to fund the following expenditures: a 68` 2023 Princess motor yacht, a 2.8 carat platinum ring with accompanying gold bands, and a $5.9 million home in Cocoplum. In total, between 2018 and 2023, the Defendant received over $6 million from Location Ventures and the Location Ventures Projects. For example, the Defendant transferred via Fedwire $820,559 from his personal account to a yacht dealer for the purchase of his yacht (a transfer funded by proceeds of the wire fraud scheme).

16. On several occasions, the Defendant falsely represented to Escrow Agent 1 and Escrow Agent 2 that he would use the released excess 10 percent deposits from URBIN Grove, URBIN Miami Beach, and Villa Valencia in compliance with the Florida Condominium Act, and then used the excess 10 percent deposits contrary to that act, including:

a. Using excess 10 percent deposits from URBIN Grove and Urbin Miami Beach to pay the real estate commissions of Real Estate Broker 1;

b. Using excess 10 percent deposits from URBIN Grove to pay himself $120,000 as a purported construction loan fee;

c. Using excess 10 percent deposits from URBIN Miami Beach to pay Pub 1 on Miami Beach to vacate the premises.

17. In 2022, an investor ("Investor 1") became concerned about the Defendant's management of the company and eventually detected aspects of the fraud, including misappropriation of investor funds, and raised concerns with the Defendant directly. Investor 1 signed an agreement with the Defendant on behalf of Location Ventures and certain Location Ventures Projects, in which the Defendant agreed to buy out Investor 1's interest to be paid on installment plan. To finance the payments, the Defendant misused investor funds and construction loan proceeds related to the Location Ventures Projects. The Defendant paid approximately $26.3 million back to this investor before he fell behind in the payments.

18. With the Defendant's knowledge and consent, Chief Financial Officer 1, and their co-conspirators generated financial statements and other documents, which were provided to investors, that made it appear as though payroll taxes had been paid even though they were not.

19. As a result of the Defendant's false and misleading statements to investors, Location Ventures and the Location Ventures Projects, the Defendant raised approximately $89,364,480.21 from investors in Location Ventures and the Location Ventures Projects. In addition, the Defendant misused approximately $10,628,518.66 in excess 10 percent deposits for condominium owners for the UBRIN Miami Beach and URBIN Coconut Grove projects. The Location Ventures Receivership made distributions to the receivership estate as a result of the disposition of Location Ventures collateral. Additionally, Location Ventures and the Location Ventures Projects made disbursements to select investors before the fraud had been detected by the victims. After factoring in these

distributions and disbursements, a reasonable estimate of the loss from the Defendant's investment fraud scheme is approximately $89 million.

*Count 13 - Conspiracy to Defraud the United States*

20. From in or around 2017 through September 2023, Location Ventures and Location Ventures Projects, through Location Development, failed to pay over $1.3 million in payroll tax funds.

21. The Defendant and Chief Financial Officer 1 were responsible persons, that is, they had the responsibility to collect, truthfully account for on Forms 941, and pay over to the IRS on behalf of Location Ventures, trust fund taxes collected from their employees.

22. From the quarter ending on or about September 30, 2017, through the quarter ending on or about December 31, 2022, Location Ventures and Location Ventures Projects withheld from the pay of their employees, and were obligated to remit to the IRS, over $1.3 million in trust fund taxes and employer FICA contributions.

23. From in or around August 2017 through in or around September 2023, the Defendant and his co-conspirators did not file with the IRS Forms 941 for Location Ventures, nor did they remit any of the withheld trust fund taxes to the IRS.

24. Additionally, for tax years 2017 through 2022, the Defendant and his co-conspirators withheld, but did not account for Forms 941 or W-2, or remit to the IRS, the trust fund taxes of over 10 employees. The Defendant and his co-conspirators therefore embezzled funds from these employee victims.

25. The Defendant and his co-conspirators knew of Location Ventures' and Location Ventures Projects' trust fund tax obligations, knew that Location Ventures were not in compliance with those obligations, and willfully failed to truthfully account for and pay over to the IRS the

withheld trust fund taxes.

a. First, the Defendant specifically knew that a company was obligated to withhold and remit employees' trust fund taxes to the IRS because the Defendant withheld trust fund taxes from his employees at a prior company he controlled before Location Ventures, failed to remit those withheld taxes to the IRS, and was apprised of his failure to do so by the IRS;

b. Second, the Defendant received emails from Controller 1 and Location Ventures' Chief Operating Officer advising the Defendant of the outstanding trust fund tax obligations and notifying him that Forms 941 were due to be filed with the IRS for Location Ventures and Location Ventures' Projects;

c. Third, Location Ventures' trust fund tax liabilities accrued on the Location Development balance sheet in QuickBooks. The Defendant and Chief Financial Officer 1 knew the trust fund tax liabilities accrued in Quickbooks. Chief Financial Officer 1, with Rishi Kapoor's knowledge and direction, periodically created false entries in Quickbooks to make it appear as if Location Ventures had satisfied their trust fund tax liabilities, when in fact the Defendant knew that Location Ventures had not satisfied such liabilities;

d. Fourth, the Defendant represented to investors on income statements and balance sheets that Location Ventures and Location Ventures Projects had satisfied their trust fund tax liabilities, when in fact the Defendant knew that Location Ventures and Location Ventures Projects had not satisfied such liabilities;

e. Fifth, several Location Ventures employees had conversations with the

Defendant advising him that Location Ventures needed to remit trust fund taxes to the IRS. The Defendant responded that they would resolve the trust fund tax matter when the IRS required them do so.

26. Instead of paying over to the IRS the trust fund taxes that had been withheld from Location Ventures' and Location Ventures Projects' employee wages, the Defendant and his co-conspirators caused Location Ventures to spend corporate funds to pay discretionary expenses, including:

a. On or about August 3, 2021, the Defendant received $1.5 million from Location Ventures, referring to it as certain "fees" and also as a "bonus" by the Defendant in an email;

b. On or about August 15, 2022, the Defendant received $1.328 for purported fees and a return of capital and partial profit distribution from the sale of the 800 Dixie project;

c. Several Location Ventures' contractors and employees, including the Defendant and Chief Financial Officer 1, received bonuses; and

d. Commissions were paid to sales agents at a luxury real estate brokerage.

27. By July 2023, investors in Location Ventures suspected that the Defendant was mismanaging and misappropriating funds from Location Ventures. In July 2023, Location Ventures hired Individual 1, a former judge with prior receivership experience, to manage Location Ventures. In September 2023, Individual 1 filed with the IRS Forms 941 for the quarters ending September 30, 2017 through December 31, 2022, and remitted to the IRS the $1,376,598.32 in unpaid trust fund taxes and employer FICA contributions.

28. To date, Location Ventures has not paid more than $800,000 in late fees, penalties,

and interest relating to the unpaid and unremitted trust fund taxes for the quarters ending September 30, 2017 through December 31, 2022.

29. Based upon the foregoing facts, which establish all the elements of the charges to which the Defendant is pleading guilty, the Government would prove the Defendant's guilt at trial.

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

Date: 5/15/26 By: ______________________

ELIZABETH YOUNG
DAYA NATHAN
ASSISTANT UNITED STATES ATTORNEYS

Date: 5/15/2026 By: ______________________

DONALD SAMUEL
JANE RASKIN
FRED SCHWARTZ
COUNSEL FOR RISHI KAPOOR

Date: 5/15/26 By: ______________________

RISHI KAPOOR
DEFENDANT