**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-CR-20073-MOORE**

**UNITED STATES OF AMERICA**

**v.**

**RISHI KAPOOR,**

**Defendant.**
_________________________________/

**GOVERNMENT'S RESPONSE TO RISHI KAPOOR'S OBJECTIONS TO THE PRESENTENCE INVESTIGTION REPORT AND MEMORANDUM IN SUPPORT OF SENTENCING**

This was a fraud driven by want, not need. Rishi Kapoor, a graduate of law school, started Location Ventures, a Miami-based real estate company, with the help of $8 million from his father. Kapoor was well compensated by Location Ventures, drawing a salary of $300,000, with the possibility of a board-approved salary increase and certain fees for securing certain real estate projects. But that was not enough. Kapoor swindled investors in his real estate company out of more than $85 million, did not pay taxes on the roughly $6 million he personally made, withheld his employees' taxes and then embezzled their withholdings, and submitted false bank statements to banks to get loans. When the investors finally began to discover that something might be amiss with Kapoor's use of their money, they ousted him and installed a receiver to run the company in the summer of 2023. Eventually, as the breadth of Kapoor's fraud became increasingly apparent, the Securities Exchange Commission filed a complaint against him at the end of that year. Did Kapoor work to pay back the money he owes the investors after being exposed back in 2023? No. Kapoor instead split his time between Fort Lauderdale and his rented home in Atlanta (where his wife was drawing substantial income ranging from $11,500 to $20,000 a month for purportedly

working for Kapoor's father and as a real estate agent), driving back in forth in his expensive luxury car.[1]

During this scheme, Kapoor misappropriated investor money to pay for a 68' 2023 Princess motor yacht, a 2.8 carat platinum ring with accompanying gold bands for his wife, and a $5.9 million home in Cocoplum. There is no sign that Kapoor will be prepared at sentencing to make a meaningful restitution payment to his investors, despite pledging at his change of plea hearing to make paying back his investors his "life's work."[2] The Government asked for Kapoor to consent to forfeit the rings and his luxury car, the only apparent assets left, but have not yet received the paperwork to do so. A serious custodial sentence for Kapoor is necessary to send a message that this community will not tolerate massive fraud schemes driven by greed.

## **SUMMARY OF THE GUIDELINES CALCULATIONS**

Kapoor pled guilty to two counts in the indictment – Count 10 (18 U.S.C. § 1957 – laundering proceeds of wire fraud) and Count 12 (18 U.S.C. § 371 – conspiring to defraud the United States and commit payroll tax fraud). The combined statutory maximum he faces for these two counts is 15 years.

The Government, the Defendant, and United States Probation are all in agreement that the applicable adjusted guideline range is: **Level 34 for Count 10, and Level 21 for Count 13.** The Government and the Defendant further agreed to a two-level variance from the guideline range in

[1] In January 2026, Kapoor's wife posted a picture of with Kapoor at what appears to be a beachside bar stating "Let's go canes!!! National Championship!!" In the picture, Kapoor, a University of Miami graduate, was wearing a UM shirt and hat – his wife (who did not graduate from UM) was wearing a grey shirt without a UM logo. Kapoor's wife then posted a pre-game video from inside the stadium of the 2026 College Football Playoff National Championship Game. The Government is not aware of who paid for the tickets.

[2] https://www.miamiherald.com/news/local/article316018346.html

Count 10 based on the upcoming changes to the loss calculations in the Guidelines. The parties therefore agreed in the plea agreement to recommend an applicable Guideline range of a **Level 32 with a range of 121 to 151 months.** The parties further agreed that Kapoor would serve 120 months on Count 10 and that the remainder of the guideline range be served on Count 12 pursuant to Section 5G1.2(d).[3] It is Kapoor's recommendation that he receive a sentence at the low end of the guidelines (121 months). The Government agreed in its plea agreement to make a recommendation in the middle of the guidelines range (136 months), provided Kapoor "complies in good faith with his obligations in this plea agreement, including the restitution agreement," among other things.

## RELEVANT FACTUAL SUMMARY

On March 3, 2026, the grand jury returned a 37-count indictment against Kapoor, charging him with the following offenses: conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349 (Count 1); wire fraud, in violation of 18 U.S.C. § 1343 (Counts 2-7); money laundering, in violation of 18 U.S.C. § 1957(a) (Counts 8-12); conspiracy to commit offense against, and to defraud, the United States, in violation 18 U.S.C. § 371 (Count 13); failure to account for and pay over trust fund tax, in violation of 26 U.S.C. § 7202 (Counts 14-25); attempt to evade or defeat tax, in violation of 26 U.S.C. § 7201 (Counts 26-27); failure to file tax returns, in violation of 26 U.S.C. § 7203 (Counts 28-32); and bank fraud, in violation of 18 U.S.C. § 1344 (Counts 33-37).

In his factual proffer in support of his guilty plea to Counts 10 and 13 of the indictment (DE47), Kapoor admitted the following:

- That he "raised investor money through fraud, including by: 1) falsely inflating the amount of his initial capital contributions in Location Ventures; 2) personally misappropriating

[3] As noted in the Government's objections to the PSR (DE57), U.S. Probation incorrectly found that Kapoor's sentence should be capped at 125 months (presumably a typo and that they meant to apply a cap of 120 months, that is the statutory maximum on Count 10).

investor money in excess of what he agreed to be paid in the operating agreements and concealing the misappropriations from investors on financial records; 3) misusing investor money for specified Location Ventures Projects on other projects; 4) misrepresenting to escrow agents that he was using excess 10 percent deposits on permissible construction costs when he was not; 5) falsely representing to investors that he was paying the payroll taxes of his employees to the IRS; and 6) misusing construction loans for URBIN Coconut Grove, Villa Valencia, and Stewart Grove to buy out an investor who discovered some parts of the fraud." ¶11.

- That he "misappropriated the investor money to fund the following expenditures: a 68' 2023 Princess motor yacht, a 2.8 carat platinum ring with accompanying gold bands, and a $5.9 million home in Cocoplum. In total, between 2018 and 2023, the Defendant received over $6 million from Location Ventures and the Location Ventures Projects." ¶15
- That "Chief Financial Officer 1, and their co-conspirators generated financial statements and other documents, which were provided to investors, that made it appear as though payroll taxes had been paid even though they were not." ¶18
- That "a reasonable estimate of the loss from the Defendant's investment fraud scheme is approximately $89 million." ¶18.
- That he withheld payroll taxes from his employees but failed to remit those taxes to the IRS as required (and that he did the same thing at a prior company and was apprised of his failure to remit the withheld payroll taxes for that company by the IRS). ¶20-26

## KAPOOR'S OBJECTIONS TO THE PSR[4]

Kapoor agrees with the view of the Guidelines in the PSR (with the caveat that Kapoor, like the Government, agrees that the PSR incorrectly caps his guidelines at 120 months). But Kapoor filed several objections quibbling with certain facts that are not relevant to the Guidelines calculation. As the Court is well-aware, these objections need not be resolved to fashion an appropriate sentence. Under Fed. R. Crim. P. 32(i)(3), the sentencing court must either make a finding as to the controverted PSR statement or "determine that no such finding is necessary because the matter controverted will not be taken into account in sentencing." *United States v. Lopez*, 907 F.2d 1096, 1101 (11th Cir. 1990); *see also* Fed.R.Crim.P. 32(i)(3)(A)-(B).

That said, the Government is of the view that the nature of Kapoor's objections is relevant

[4] Kapoor's objections to the PSR were emailed to assigned probation officer and the Government but do not appear to be filed on the docket.

to the sentencing factors and will therefore address those objections here. Curiously, several times, Kapoor objects to paragraphs of the PSR that were taken from his own factual proffer.

For example, Kapoor admits in his factual proffer:

> 12. For example, in 2021 and 2022, the Defendant took more from Location Ventures and from the Location Ventures Projects than the amount he agreed to receive in the operating agreements without getting board or investor approval to do so, including the following specific transactions:
>
> a. In 2021, Defendant took approximately $1.5 million that he was not authorized to receive from a Location Ventures bank account on approximately August 3, 2021; and
>
> b. In 2022, Defendant took approximately $1.328 million that he was not authorized to receive from a Location Ventures bank account on approximately August 15, 2022.

But Kapoor lodges objections (Objection No. 5-6) quibbling with his own admission, trying to claim a "substantial portion" of those million dollar misappropriations were unauthorized. There is, of course, no need to "revise" Kapoor's admissions made under oath.

In a similar vein, Kapoor admits in his factual proffer to misusing condo buyers' escrow deposits for three separate projects – URBIN Grove, Urbin Miami Beach, and Villa Valencia (in Coral Gables):

> 16. On several occasions, the Defendant falsely represented to Escrow Agent 1 and Escrow Agent 2 that he would use the released excess 10 percent deposits from URBIN Grove, URBIN Miami Beach, and Villa Valencia in compliance with the Florida Condominium Act, and then used the excess 10 percent deposits contrary to that act, including:

But, then Kapoor "proposes that the reference to Villa Valencia" with respect to the condo buyers' escrow deposits "be deleted" from the PSR. Kapoor references irrelevant legal advice he received on the use of condo deposits to pay down a construction loan on that project. That is not the basis of the escrow fraud here and Kapoor knows it. Kapoor's admitted to misusing the Villa

Valencia escrow deposits in excess of 10 percent of the purchase price in his factual proffer – contrary to the Florida Condominium Act that required him to only use those deposits on construction of that project -- and his efforts to claim otherwise now are somewhat surprising. In one glaring example, a buyer made a $2.4 million excess 10 percent deposit to purchase a penthouse condominium at Villa Valencia and Kapoor misused $400,0000 of that condo deposit to buy property in Montana in February 2022 (the penthouse was, of course, not completed on Kapoor's watch because he misused the deposit money).

Kapoor's attempts to "revise" his admissions in his factual proffer should be rejected.

**RESPONSE TO KAPOOR'S OBJECTIONS TO THE PSR**

The Government's response to Kapoor's objections are as follows:

**Defense Objection No. 1**

The PSR accurately sets forth the fine amounts based on the loss amounts set forth in the factual proffer and Offense Conduct.

**Defense Objection No. 2**

The Government concurs that the correct adjusted offense level for Count Thirteen is 21.

**Defense Objection No. 3**

The Government concurs that Defendant was the CEO.

**Defense Objection No. 4**

The Government concurs with Kapoor's proposed factual change although not relevant to his sentencing guidelines.

**Defense Objections No. 5-9, 15, 16**

These objections seek to "revise" Kapoor's factual proffer and, as discussed above, should be rejected.

**Defense Objections No. 10-13, 15, 17**

These objections are irrelevant to the guidelines and need not be taken into account to fashion a sentence.

**Defense Objection No. 18**

The Government agrees that the parties and the victims are still trying to come to an agreement on the restitution.

**Defense Objection No. 19**

The Government agrees with this objection regarding the base offense level guideline for Court 13.

**Defense Objections No. 20, 30**

These are typographical errors and the Government does not object to fixing them.

**Defense Objection No. 21-25**

These are proposed edits to various personal information that have no bearing on Kapoor's sentence.

**Defense Objections No. 26-29**

The Government agrees that the application of the sentencing guidelines in the plea agreement is the correct application.

## THE SENTENCING FACTORS

"[T]he district court must consider several factors [set forth in 18 U.S.C. § 3553(a)] to determine a reasonable sentence: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed

educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims." *United States v. Talley*, 431 F.3d 784, 786 (11th Cir. 2005) (internal quotations and citations omitted). The Court, of course, can place particular emphasis on certain sentencing factors and the Government will do so here as well.

**The nature and circumstances of the offense.**

First, what sets this offense apart from other large-scale frauds is its breadth. An $85 million investor fraud would be very serious, especially the multifaceted investment fraud that Kapoor spearheaded (one that included evidence that he misused condominium buyers' deposits, that he falsified balance sheets to mislead investors into thinking he put more into the company than he did, that he lied about taking a distribution from the sale of one of the projects, and that he gave investors fake financial statements omitting the company's ever increasing payroll tax liabilities). But what sets this fraud apart is that Kapoor committed bank fraud related to his provision of false documents lying about his assets and liabilities to secure a loan to purchase a $5.3 million yacht, did not pay his own personal taxes, and withheld his employees' taxes but did not remit those taxes to the IRS. The depth of Kapoor's fraud is astounding. The nature and circumstances of this offense mitigate in favor of a serious sentence.

**The history and characteristics of the defendant.**

The history and characteristics of Kapoor do not provide a basis for sentencing mitigation. Kapoor is educated, having received a law degree at University of Miami, and was given a substantial sum of money from his father to start Location Ventures. Kapoor's legitimate salary from Location Ventures, over $300,000, pales in comparison to what most Americans make. Yet,

Kapoor still needed to commit fraud. Defrauding someone of money that you desperately need is still a crime, but Kapoor did not need this money, a fact that makes this crime so egregious.

**The seriousness of the offense.**

It is hard to imagine a more serious financial crime than one that defraud investors, condominium buyers, the defendant's own employees, the IRS and two financial institutions.

**The need for deterrence.**

The Eleventh Circuit observed: "General deterrence is more apt, not less apt, in white collar crime cases." *United States v. Howard*, 28 F.4th 180, 209 (11th Cir. 2022). The reason is that "economic and fraud-based crimes are more rational, cool and calculated than sudden crimes of passion or opportunity," which makes them "prime candidates for general deterrence." *United States v. Kuhlman*, 711 F.3d 1321, 1329 (11th Cir. 2013) (internal citations omitted). Courts have routinely noted the appropriateness of significant sentences in the context of financial crimes, including specifically insider trading, committed by defendants who make the calculation that white collar crime is "a game worth playing." *United States v. Goffer*, 721 F.3d 113, 132 (2d Cir. 2013). As the Eleventh Circuit has noted, in passing the Sentencing Reform Act, "Congress was especially concerned that prior to the Sentencing Guidelines, [m]ajor white collar criminals often [were] sentenced to small fines and little or no imprisonment. Unfortunately, this creates the impression that certain offenses are punishable only by a small fine that can be written off as a cost of doing business." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006).

Here, the need for deterrence is great, especially when it comes to general deterrence. The damage that defendants like Kapoor inflict on our business community and the reputation of those living in our city is incalculable. A message must be sent that these crimes will be treated seriously.

**Comparative Sentences**

In this district, where fraud is rampant, particularly in the investment fraud space, serious sentences are handed down routinely, even in cases where defendants plead guilty. *See United States v. Jean Joseph*, 25-cr-20483-Martinez (the defendant, previously federally convicted of fraud, was sentenced to 20 years for spearheading a real estate fraud scheme that raised over $56 million from investors). The Guidelines applicable to Kapoor, as agreed to by the Parties, is in line with other large scale investment frauds.

The Chief Financial Officer of Location Ventures, Daniel Motha, pled guilty to a one count information charging him with conspiracy to defraud the United States and interfere with the lawful function of the IRS. *See United States v. Motha*, 26-cr-20120-GAYLES. Motha was only charged with the payroll tax fraud he committed with Kapoor. Motha's guidelines after acceptance are a Level 19 (30 to 37 months and that lower guideline reflects that he was not charged with the wire fraud conspiracy).

**RESTITUTION, FORFEITURE AND FINES**

The Government has reached out to victims to determine the amount they are claiming for restitution. While the Government will make every effort to obtain this information well in advance of the 90 days post sentencing afforded by the Mandatory Victim Restitution Act, the Government will likely not have final information by sentencing.

The Government filed a preliminary unopposed motion for a order of forfeiture (DE55). As noted, the Government has not yet heard back from counsel for Kapoor about the consent to forfeiture of the ring and his car.

The Government will likely not be seeking a fine at sentencing given Kapoor's inability to pay full forfeiture and restitution. *See* PSI at ¶ 173-175.

## OTHER ISSUES

The Government has notified the victims of the sentencing hearing and is aware of at least two victims who would like to make brief statements to the Court.

## CONCLUSION

For all of these reasons, a serious custodial sentence is appropriate in this case.

Dated: August 17, 2026

Respectfully submitted,

JASON A. REDING QUIÑONES

UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

By: /s/ Elizabeth Young
ELIZABETH YOUNG
DAYA NATHAN
Assistant United States Attorneys
Court ID No. A5501858
Elizabeth.Young@usdoj.gov
United States Attorney's Office
99 Northeast 4th Street
Miami, Florida 33132-2111
Tel: (786) 761-3153